Joseph R. Glownia, J.
On July 3, 1976 at approximately 11:30 a.m. the defendant, Kenneth Faude, was stopped on State Route 33 in the Town of Cheektowaga by State Police Officer D. D. Domon. The defendant was issued a uniform traffic summons, charging him with the violation of section 397 entitled "Equipping motor vehicles with radio receiving sets capable of receiving signals on the frequencies allocated for police use”, a misdemeanor under the Vehicle and Traffic Law.
The defendant moves to dismiss upon the grounds that section 397 does not contemplate prohibiting the use of radar monitoring devices, and if it is within the intent of the section, it does not clearly apprise the defendant of the crime with which he is charged. Further, that the proposed application of section 397 in this case is in conflict with the exclusive licensing powers of the Federal Communications Commission.
The issue presented is whether the device herein is a "radio receiving set” and what the Legislature intended by the use of the word "signals.”
A factual hearing was held on November 5, 1976 which disclosed the following: the device in question is an "electrolert radar detector” which is a radar detection device com *435 monly referred to as a "fuzzbuster.” When the device is operated, a yellow light about one inch in diameter allegedly illuminates to notify the driver when radar beams are within a certain proximity. The device is not capable of transmitting nor is it capable of relating any sounds or voices within the airwave upon which it operates. It appears that in addition to police radar signals, the unit may be activiated or may respond when other radio signals are within the area.
Section 397 of the Vehicle and Traffic Law states as follows: "A person, not a peace officer, who equips a motor vehicle with a radio receiving set capable of receiving signals on the frequencies allocated for police use or knowingly uses a motor vehicle so equipped or who in any way knowingly interferes with the transmission of radio messages by the police without having first secured a permit so to do from the person authorized to issue such a permit by the local governing body or board of the city, town or village in which such person resides, or where such person resides outside of a city or village in a county having a county police department by the board of supervisors of such county, is guilty of a misdemeanor, punishable by a fine not exceeding one thousand dollars, or imprisonment not exceeding six months, or both. Nothing in this section contained shall be construed to apply to any person who holds a valid amateur radio operator’s license issued by the federal communications commission and who operates a duly licensed portable mobile transmitter and in connection therewith a receiver or receiving set on frequencies exclusively allocated by the federal communications commission to duly licensed radio amateurs.”
That section makes it a crime to equip or knowingly use a motor vehicle equipped with a "radio receiving set capable of receiving signals” on police frequencies. It further prohibits knowing interference with the transmission of police radio messages.
The language of section 397 of the Vehicle and Traffic Law was originally passed by the Legislature in 1933 as section 1916 of the Penal Law. (See L 1933, ch 405.) The relevant wording remained unchanged through the years. In 1948, the law was changed to exclude licensed amateur radio operators, and in 1966, the term "motor vehicle” replaced the word "automobile.” (L 1948, ch 183; L 1966, ch 620.) There appears to be only one prior reported case under this section which involved a radio type receiver capable of receiving voice *436 messages. (People v Verdino, 78 Misc 2d 719.) In that case, the defendant was found guilty because the device was located within the defendant’s truck and was capable of receiving police broadcasts at any time the defendant chose to activate it. The court noted that the device in question was, "the very situation which section 397 of the Vehicle and Traffic Law seeks to prevent”. (People v Verdino, supra, p 722.)
In determining whether the Legislature intended section 397 to include the type of device in question in this case, this court notes that as pointed out in counsel’s memorandum, radar itself did not appear until approximately 1940 and this section was enacted in 1933. There is no subsequent amendment nor legislative memorandum to indicate that the section contemplates any device other than those capable of receiving voice messages or capable of interfering with the transmission of police messages.
In support of this interpretation is a corresponding section under the Penal Law (§ 140.40) which states as follows: "Unlawful possession of radio devices. — As used in this section, the term 'radio device’ means any device capable of receiving a wireless voice transmission on any frequency allocated for police use, or any device capable of transmitting and receiving a wireless voice transmission. A person is guilty of unlawful possession of a radio device when he possesses a radio device with the intent to use that device in the commission of robbery, burglary, larceny, gambling or a violation of any provision of article two hundred twenty of the penal law.”
That section makes it a crime to possess (as opposed to equipping a motor vehicle with) a radio device capable of receiving a wireless voice transmission on police frequencies with intent to use it in the commission of certain crimes. It contemplates prohibiting only devices capable of intercepting police messages which could obviously thwart the successful apprehension of criminals while in the process of violating the law.
In further support that the Legislature intended section 397 to prohibit only a device capable of receiving voice transmissions is a memorandum of State Association of Chiefs of Police, Inc. That memorandum was written in 1966 when section 397 was amended to include "motor vehicles” as opposed to just "automobiles.” (NY Legis Ann, 1966, p 26.)
In discussing the reasoning behind this section, the memorandum states, in part, that: "It was recently brought to police *437 attention that burglars were operating with the look-out car being tuned to police frequencies listening to each call in case the burglary had been discovered and police cars were sent to the scene * * * This is a great aid to the thieves in the commission of their burglaries by transmitting information received on the police frequencies by walkie-talkie radios to the burglars in the building advising them of any police action in the area”. (See NY Legis Ann, 1966, p 26, supra.)
In a memorandum of State Association of Chiefs of Police published in reference to the adoption of section 140.40 of the Penal Law, it is noted that the purpose of that section "is to provide that person is guilty of unlawfully possessing radio device who * * * possesses device capable of receiving signals on frequencies allocated for police use or device capable of transmitting or receiving wireless voice transmission under circumstances evincing intent to use same in commissi on of certain crimes” (emphasis added). (See NY Legis Ann, 1970, p 46.)
A second memorandum indicates that "This bill would prohibit the operation or maintenance in public places of radio sets capable of receiving signals or frequencies allocated for police use without authorization from appropriate police officials.” (Emphasis added.) (See NY Legis Ann, 1970, p 54.)
In both memoranda, it is significant that the term "signals” is used synonomously with the term "voice transmissions”, and "voice messages.” Both memoranda go on to describe the activity sought to be prevented by prohibiting the use of these devices as the same activity described in the memorandum dealing with section 397 of the Vehicle and Traffic Law.
Based upon the above, it is the opinion of this court that the "device” or "radio receiving set” sought to be prohibited under section 397 is one capable of transmitting or receiving voice messages, or capable of interfering with the same. It does not prohibit the use of a device which merely notifies someone that a particular airwave is being used.
The charge is dismissed.